I respectfully submit that the District Court erred in entering summary judgment of invalidity because the claims are not enabled up to infinity. The cases, including the Fisher, Amgen, and Plant Genetic cases relied upon by the District Court do not establish an infinity requirement. How do you construe this particular claim? The claim has been construed, there's been a markment, and the particular clause at issue wherein applying a small amount of electromagnetic energy produces a resistance change of at least 10%. That has been construed to be at least 10%, which is a threshold value that must be enabled, not a range to infinity. What is your cap on, at least 10%? Clearly you're trying to argue that, through your own experts, that we're talking about 100 to 120%. How far can you go without getting to infinity? This is an open-ended claim, and as a practice in patent law, open-ended claims are not deemed to claim to infinity. They're deemed to claim a threshold, and the practice of open-ended claiming is allowed to prevent one from avoiding infringement by simply adding to or improving upon. You got an inch of claims, didn't you? There's other claims as well, Your Honor, yes, that's correct. At the time of filing, the highest resistance you'd gotten to was 11.8%, right? In the laboratory, yes. Even today, we're not even beyond 20%, are we? No, I think that's incorrect, Your Honor. The expert evidence on our side is that the patent enables resistance changes at least up to 120%. Their evidence is that... What has anyone actually accomplished to date? Chief Judge Rader, Your Honor, 604% is the highest to date. The prevailing case law on claim language... 604%? 604%, yes. So, do you contend that this patent enables up to 604%? No, Your Honor. So, where between 120 and 604 do we stop? Well, that's the question, and that's why the case law does not require open-ended claims, including using this specific phrase, at least, to be enabled up to infinity. The prevailing case law treats the claim phrase at least as a threshold, not as a range to infinity, for example... Will you show me anywhere in the record any achievement of resistance beyond 11.8%? Yes, Your Honor. I believe it's set forth in our blue brief, and I'll try to get a cite here in a moment, but there is evidence cited in our blue brief, as well as our gray brief, that shortly after the filings, the particular inventors of this patent achieved 18%. Shortly later, IBM, using the teachings of the patent, achieved 20%. And then Hitachi itself cites evidence that they were able to achieve 604%. But again, Your Honor's important point is that the at least 10% is a threshold, it's not a range to infinity. There are over 2 million patents issued with claims that recite at least... Even if it's up to 600%, or even if it's up to anything over 120, then you've got a problem, certainly with respect to written description, right? No, Your Honor. I believe written description is treated the same way as enablement. Written description falls on the same issue of this claim phrase, at least 10%. Does that require enablement? Does it require written description up to infinity? The only way that... You're not going to contest that you have to enable the entire scope of the invention, are you? The case law is clear that you have to enable the scope of the invention. That's where Fisher and Amgen and those other cases come in, right? It's for all the cases, including the cases we cite, Hogan, U.S. Steel, and Hormone Research. So your only hope is that we don't construe the claim according to its normal meaning? I disagree that at least 10% of its normal meaning is infinity, but... The problem I'm having here is I don't think you challenged claim construction. If you didn't challenge claim construction, and that's your only argument here, don't you have a little difficulty? I don't believe so, Your Honor, because the claim construction, or this was construed, at least 10% was construed to be at least 10%. That's what our infringement case is based upon. They're meeting at least 10%. At least 10% extends upward from that, right? No, I disagree, Your Honor. It claims a threshold. At least 10% is 20% fit within that? It fits with that. 100% fit within that? It does not preclude that. 300% fit within that? 5,000% fit within that? Unfortunately, it all does. And I don't think you've challenged whether or not that is the meaning of the language. Your Honors, again, both parties proposed at least 10% to be defined as at least 10%. And when you had narrower claims that you could enable, you got those. I think it's instructive to look at the cases relied upon by the district court. The primary case was Fisher. Fisher does not establish a bright line rule of infinity for enablement. If Fisher established a bright line infinity rule as applied by the district court here, scores of patents would have been challenged on that ground over the last 40 years. Well, even if we agree that infinity might not be a reasonable construction of either this claim or what the patent was intended to cover, you're not bounding. You haven't given us a bound. You haven't bounded it at the top end anywhere. That is the practice. You told me not 600, but yes to 120. And then you said yes to 300. So where do we, where is the middle, where do you stop? Well, 100%, 600% and higher, they all meet the at least 10% threshold in that they rise to the level of at least 10% threshold. But we have not claimed beyond 10% to infinity. Let me ask you a question. Do you sue them for infringement on the 600? We have not, Your Honor. No. Would you, using this claim? Not based on them having 600. The claim is open-ended. Your testimony, your experts say it's open-ended. And you just said a moment ago, using this technology, they have achieved 600, which I'm still confused because I don't think that's, we'll find out in a minute. But assuming that that's correct, why wouldn't you sue them? We would sue them because they meet the at least 10%. If it's an infringement requirement, it's a validity requirement. You've got to enable it. Did you enable 600%? The evidence in the record is enablement up to 120%. In the hypothetical you described... Had anyone done 120%? Well, the record evidence is 604%, so yes, they've reached 120%. At the time of filing. At the time of filing. You must enable it at the time of filing. What had you been able to do at the time of filing? In the lab, the actual result. 11.8%. Yes. And put the F- Can you tell me then that you've enabled 600? The expert evidence on our side is that the patent teaching at the time of filing enabled one of skill in the art up to 120%. I teach a wonderful course in patent law, and we always talk about the laser and Gordon Gould. And he thought that he had the claim to the laser. But of course, he filed that claim in 1959, and the laser was not first produced in any workable fashion for another three years. And so he had a lack of enablement. Isn't this an even more extreme case? I submit it is not, Your Honor. Here... How would you get around the Gould case? Here, Your Honor, the claim recites at least 10%. You have to be able to show that one of skill in the art at the time you file, 1995, could do 604%. I disagree with that premise, Your Honor. But that's the law. That's what Gordon Gould lost the laser over and yelled at me once in a little session for our law, which he thought was so unreasonable. Your Honor, if I could point out the case law cited on pages 21 through 25 of our brief that deal with the language at least. In each of those cases, the phrase at least is treated as a threshold that must be enabled, not a range to infinity that must be enabled. The Vivid Technologies case involved the claim language at least a presetable level, was treated as a threshold value. The Amgen case involved the claim language at least 160,000 I.U. That was treated as a threshold. The Wands case involved the claim language at least 10 to the ninth. In this case... In this situation, there's no doubt that the invention back in 1995 was an emerging technology. There's no doubt that this computer sitting here probably comes from that. But because it was a newly emerging or a nascent technology, aren't we required to hold you to a higher enablement standard? I don't believe so, Your Honor. I think if we endeavor in that sort of analysis, looking at the pioneering nature of the invention, though we don't rely upon that, I think that weighs in our favor, particularly when the underlying article here was cited nearly 2,000 times, recognizing the contribution. The case law doesn't mention infinity. Admittedly, if this claim is read... Let me ask it a different way. If we gave you this claim, what incentive would anyone have to continue the inventive process to push the resistance beyond the 11.8% that you were able to demonstrate? Why would anyone invest any more in research to go on and improve this technology? Your Honor, the open-ended claims are not deemed to claim infinity, and they do not block another... You're not answering my question. You're answering the question you want to answer. But why would I invest in any technology beyond if I couldn't get a patent on it? You could get a patent on it, Your Honor. Others are entitled to improvements over what's taught in the patent. Patentable improvements, I mean 102 and 103, those companies or individuals are entitled to obtain improvement patents. This would not block those patents. In fact, Hitachi has subsequent patents. It wouldn't block those. But the improvement patents don't entitle one to invalidate earlier patents. The earlier open-ended claims do not block someone from obtaining an improvement patent. Why didn't you, given your expert declarations, why didn't you ask the court to construe the claim as having a bound between at least 10% and 120%? Your Honor, because we always viewed at least 10% as a threshold. As the case law, cited on pages 21 through 25 of our blue brief, point out, and Hitachi proposed the same language, at least 10% is at least 10%. Again, it's an open-ended claim that prevents someone from avoiding infringement by simply adding to or improving upon, but it does not block something like that. But aren't you asking us to find that at least 10% means the same thing as 10% or more? No. At least 10% means that if you have 10%, if you reach that threshold, then you meet that limitation. Going beyond that is not the basis for infringement, but going beyond that does not avoid infringement. So the basis for infringement is meeting that 10% threshold. If that's how you view it, at least 10%, and at the time of the invention, you could only get up to 11.8, and that's above 10%, shouldn't we look at this 10% or more up to 11.8%? Hitachi certainly could have raised a non-infringement argument asking for the construction to cabin at least 10% to an upper range. Didn't ask that. And the case also recognizes the reverse doctrine of equivalence can be used as a non-infringement argument. Hitachi hasn't asked for that. Here, at least 10% was construed by both parties to be at least 10%, which the case law treats as a threshold value. Would you like to save your time, Mr. Pollinger? Yes, Your Honor. Okay. Thank you. Reines? Thank you, Your Honor. If I should anticipate the question about the maximum resistance change in the record, but I will do so since the Chief raised it, that was accomplished by ACADA in 2008, and the percentage was 604%. Just to understand the nomenclature, when we talk about percent change, 100% is basically a doubling of the resistance. So if the resistance value is 1%, just hypothetically. That's 2008 though, right? That's 2008. That's more than a decade. We're looking at 1995. Right. It's more than a decade later. Yep. So I think the place to start here is the observation by the Chief that there are claims to the fabrication approach, which is really what was invented in this situation. What was invented here was a particular fabrication approach using particular materials with a glow discharge technique. And there are a number of claims in this patent, and there are other patents, related patents, and they have those claims. Why don't we just consider this a threshold? The reason is because the record doesn't permit it, in terms of the claim construction of the district court. But I think more to the point, the inventor himself at Joint Appendix 2604 testified that it falls within the scope of the claims, that if you have a 1,000 resistance, there's no mention of a pause at 10% or anything else. But shouldn't we really just say that this claim construction makes no sense, and the only reasonable construction of this specification, this claim in light of the specification in the prosecution history, is at least 10%, but not above 11.8? I think that would do violence to the claim language that was chosen during prosecution addressing these claims. The inventor was candid and said they want to claim it in the broadest possible way. And that's the classic case of be careful of what you ask for, you may get it. They wanted to claim it in the broadest possible way. That's at J8-1961. I think there's a lurking problem here also with respect to claiming a result, right? Basically, these claims, and this is undisputed on the record, is a classic, basic tri-layer design tunnel junction. It's basically two electrodes and an insulator. That's what the claims say when you look at it. And what they're trying to say is new about the claim is the result. But it was more than that, wasn't it? They were able to achieve that result, even at 10%, and they were able to do it at room temperature. The room temperature factor is one of the factors that made the technology novel at the time, that made it a good invention. Absolutely correct. Taking it at face value, that's true. There was an accomplishment. The point is that the accomplishment isn't in the claim, except insofar as they're attempting to use a result. I think a quick analogy, analogies always need their appropriate place, is if you invented a new car, and you said my car could go 100 miles an hour, no other car could go 100 miles an hour, every other car putted around at 30 miles an hour. And then you wanted to claim a car that goes more than 100 miles an hour, that goes above 100 miles an hour, and all you were able to do was 101 miles an hour, 106 miles an hour, and 118 miles an hour, no one would say you should be able to capture every car in the world that's able to go to any speed in the world, because you hit the result first. You invent a car that will not get up to 10 miles an hour without overheating and blowing up, and then you come along and you invent a car that can go over 10 miles an hour, or at least 10 miles an hour, without overheating and blowing up, and everybody else comes along and says, well, I invented the car that's going 100 miles an hour, but isn't that the same basic technology that's being used by Hitachi? Taking that analogy, the new technology is an improved radiator, if I understand the analogy correctly, and they're not claiming an improved radiator. The problem here is not claiming what they did to fabricate to reach a better result. This is Fisher all over again. You can't just say a better X that achieves above X result and dominate the entire field without teaching people how to use it. It's not like there's any particular special sauce or anything that they have that's in the claim at all. It's just a generic classic tri-layer design with a result, better than 10%. And in terms of claim construction, I would note that their expert and their inventor both said 100% is clearly included. So I think that given that they wanted to claim it the broadest possible way, they bragged about claiming it the best possible way. They didn't put the district judge. They didn't tell him 11.8%. Here you had Chief Judge Bartle work very hard, a 20-page nearly opinion, and he was working with the claim construction that was presented. How do you respond to all the cases that your opposing counsel cites, page 21 to 25, I think you said, with Amgen and others that talk about threshold claiming? Are we to assume that all of those claims claim invalid patents as well? Not at all. In Amgen, they weren't talking about an above percentage. But in all those claims, the invention is contained in the claim. It's not just a generic concept with an improved result. The only one that's like that, that's even close to that, is Fisher. This case is actually worse than Fisher. If you can go case by case and look at them, in most of those cases, the range that they're talking about isn't even claimed. There's nothing in the district court's opinion that says that there's no real invention here. The district court doesn't say this is just a generic concept that claims a result. That wasn't the basis for the district court's conclusion. He does say it's a generic concept, and he does say that there's only one embodiment. They only teach one embodiment that takes about a paragraph. He talks about the unpredictability and all the things that you're supposed to consider, and none of those facts are disputed. You don't have factual debates here. So there's one skinny fabrication approach described. You have an art area that's incredibly unpredictable. One thing to note is in the patent itself, the patentee says that they think the theoretical bound is 24%. That's actually in the patent application. You don't have to enable what one of skill in the art would consider foreseeable in light of what they disclosed. Why isn't what they're dealing with here is just things beyond the foreseeable, beyond what one of skill in the art would understand? I think because as I just said, they foresaw that it would go up at least to 24%. That's in column one. In fact, in the file history during the prosecution, they said we thought it was 24%. Now we think it's 100%. That's at JA 1961. So they thought there was some theoretical number that you could hit, and then they bragged during file history, we're now at 18%. So they clearly knew that this was a race to go higher and higher, and that everybody was shooting for it, and that there was formula as to what people thought they could get to, and that it was inevitable to get there. An important... Are the technologies that have gone higher using their method? It's not even remotely their method. It's the reactive deposition of magnesium. I was just going to get to the Gallagher and Parkin article as an important data point here. That's a key article, even according to MagSale. That's at their opening brief at page eight. And there, it makes it clear that the fabrication is what's driving this. How do you make the layers so that they're improved, so that you have better results? And there's obviously widespread research. At JA 1941, in that article, they made clear that one of the major innovations that led to the higher numbers, including into the hundreds, was the reactive deposition of magnesium oxide, not oxidation. Those are two very different concepts. One's a deposition process that uses molecular beam epitaxy. One is glow discharge oxidation. They're just totally different fabrication techniques. And it was that fabrication technique that improved. And that article documents beginning to end that the improvement in these layers is all about the fabrication technique. Can you achieve 620% using the fabrication technique that was used by the invention? Obviously, I'm not skilled in the art, but I think there's nothing in the record that would suggest that that's accomplishable. And the article, it's a review article. So in that sense, it's sort of nice. It's not really kind of like a prior piece. It's a review of the area in 2000. Suppose a claim had said 10% or more. Would that be an enablement problem for you? I think so. Any open range. If they had said 10% to 11.8%, which is what Judge O'Malley suggested, that would have been possibly supported. You're saying we should find that any patent that has an open range should be, we should find that they lack enablement. I would not say that. I think it's going to be case specific where it's claiming a generic approach and there's no inventive piece. There's none of the advantages. They talk about what the advantages of the invention. What's the special thoughts? How did you get high? None of that's in the claim. Are we still using tri-layer fabrications? If we're two electrodes with an insulator, yes. I think that's been... Is this the first one to do it? No, not at all. They don't, I mean, that's right in the column one. They know that there's years and years of... Were they the first one to do it and achieve the change in resistance and an acceptable change in resistance at room temperature? I mean, that is, there's pride and debate that goes on in that area. Certainly people did it at the, I think it's undisputed at the 2, 3, 4%. I think the record shows there's other people that did it 10%, but that's not a debate that I think is critical here because their fabrication technique is really what they added to the art. Even if, yeah, if you take it at face value, great job. You got the 10%, no one else did. Use your fabrication technique with glow discharge, an oxidation step rather than a reactive deposition step. Congratulations, you have claims to that. Go sue people that actually do that. Don't block the entire area of development of computer desk readers that anyone that gets a good result above 10% in the future, regardless of what fabrication technique they improve and create and move away from. I mean, if you go back and read the claims, I'm sure you have already, you'll see it's basically magnets and an insulator layer. It's virtually functional claiming. Back to your comment that this has to be done on a case-by-case basis and you recognize that enablement is supposed to be done in that context. You recognize that the WANs factors are important and you apply them in your brief or argue them in your brief. Are we supposed to, should we be concerned that the district court never really touched on the WANs, cited WANs, but never walked through the factors? I think that's a form over substance issue. If you look at our brief, we actually did, I think, a pretty careful job when we went through each WAN factor to show the judge. I think we have a quotation from that. Judge's opinion, which is 20 pages, citing where he points out the unpredictability in the field. He points out the narrowness of the teaching. He points out the skill level in the art, 20 years of failures. By the way, you asked in the last argument, the skill level in the art. One thing to note here, the skill level in the art that was presented by Maxwell and used for this issue is a bachelor's with two or four years in the art. And the idea that they could use this specification to make a whole range of new devices in this complex, unpredictable area is really totally unsupported. Their expert declaration just totally ignores that standard. And in fact, I thought it was interesting in looking at the limits of that expert opinion. He states, others were able to achieve more than 10% other skills in the art. And he drops a footnote with this skill level. No one remotely close to ordinary skill in the art accomplished anything above that number. These were teams from IBM, teams from Hitachi, groups that are operating at the highest level with incredible resources, strong resources at this problem. If we should treat claims that are open-ended on a case-specific basis, then why shouldn't we remand this and have the claim construed, the at least 10% claim construed? Well, I think counsel from Axel was quite candid with the court that that's been done, that they've acknowledged that it's anything above 10%. And like I said, we don't need to dance around that because their expert at JA 1888 said point blank, yes, 100% would be covered. Several hundred percent would be covered. Yes, these future events would be covered. Then the inventor said the same thing, said the 1,000 would fall within the scope of the claims. And like I say, the irony which came up in the Liebel case and the automotive cases, they said they wanted to claim the broadest possible way on these claims in the file history of JA in 1961. So I just think with the extremely limited teaching claiming only a result, we did a great job. In reply, they may try to say, well, we have a special sauce that let people get over 10%. None of that's in the claim. So there's a written description problem too that I think shows they did not claim, they did not describe their own possession of the invention. Now, obviously there's different doctrinal beliefs as to the role of the different invalidity defenses. I would say that there's a consensus that enablements the bulwark against overreaching claim drafting by people that are incentivized to do that. And they do it and they want to claim the broadest possible way. And the enablement requirement is so important to enforce this way so that people don't start trying to find other doctrines to cabin in the overreaching of someone saying, if you do a great job, we cover you if you're using a basic tri-layer design. And for that reason, I think that the Chief Judge Bartle's extremely exhaustive opinion of nearly 20 pages should be affirmed. Thank you, Mr. Ryan. I don't have anything else. Thank you. Bollinger. Thank you, Your Honor. The Hogan U.S. Steel and Hormone Research cases established that claims need not include extra language to exclude possible future improvements or additions, including improvements to infinity. The district court sought to distinguish these controlling cases on the ground that the subsequent possible improvements or additions were not claimed and were unknown in the sense that- You have to be able to teach one of skill in the art how to achieve those, right? You have to teach one skill in the art how to achieve the threshold of what is claimed. Again, the nature of open-ended claiming does not claim to infinity. It claims the threshold of- The whole scope. You have to get the- Another one of my favorite cases is one of Judge Rich's great cases in Ray Wright, where the inventor claims to have invented a way to make vaccines that cure all RNA viruses. Of course, that's AIDS. We still haven't done that. And Rich points out, until you have a cure for AIDS, he's not enabled the full scope of this invention. Why isn't that exactly what's going on here? You've taught people how to do 11.8%. You haven't enabled the whole scope. The claims that you're- The cases that you're describing are broad genus claims directed to the unpredictable arts of chemical reactions. That's not the type of case we have here. What is claimed is a 10% threshold. The open-ended claim does not block subsequent improvement patents. Did you show anyone how to do 600% in 1995? The expert evidence is that the teaching as the data filing enables up to 120%. No, not to 600%. The only way- Had anyone done 100% at the time in 1995? Actual reduction of practice? No, Your Honor. That's part of the Gould case again. The experts looked at Gould's disclosure and they said, oh, this will make a laser. But of course, nobody could do it. Your Honor, infinity is not in this case. So what experts say is not a definition of what enablement is. You have to enable it. You have to show one of skill in the art how to make it and use it. Your Honor, I agree that if this claim is read to require enablement up to infinity, we have a problem. But the case law doesn't bear that out. And the only way- But now that's claim construction again. That's all done, isn't it? You didn't contest that. And we went with at least 10%, which again, the case law on pages 21 through 25 of our brief establishes a threshold that must be enabled, not a range to infinity. And the district court construed that as at least 10% extending upward. And that was incorrect, Your Honor. Well, that's a claim construction. Did you challenge that? A hearing was not held on this motion for summary judgment. We asked for one. It was not held. Are you claiming that that's error, not to hold a hearing on it? Well, I'm not saying it's an error, but I think it sheds some light into whether- You mentioned that about four times in your brief. I think the purpose of that is to point out, one, the Fisher case, which wasn't cited in any of the briefing. First time we saw that was in the decision, not in the briefing, no oral argument. And this claim construction issue didn't come up in the briefing. I don't think it's a claim construction issue because the case law establishes at least 10% as a threshold. That's the way the parties submitted it. The court distinguished our cases on the ground that the subsequent possible improvements or additions were not claimed or were unknown and that no one thought it possible, even though it may have been desirable. But that's the same situation here. Infinity is not claimed. It's not accused of infringement and still unknown and thought impossible. And at another point, all the other cases that Hitachi cites, they are distinguished on the ground that in all those cases, the non-enabled subject matter is both claimed expressly and accused of infringement. Accused of infringement. Here, we're not accusing anything above 10% of infringement. In fact, Hitachi's argument is that it, as a non-infringement argument, that it doesn't even meet at least 10% threshold. But on average, its accused products exhibit a resistance change of 5%. We contest that. We believe they get slightly above 10%, so they meet at least 10% threshold. But this case is not about infinity. And that distinguishes the AK Steel case, the Citric case, as well as the automotive technology cases. That's, I think, an important distinction here, Your Honor. Thank you, Mr. Follinger. Thank you for your time. The next case is Whitmore versus...